(84 South. 551)

RANDLE v. WALKER. (6 Div. 519.)

(Court of Appeals of Alabama. Oct. 28, 1919.)

1. CORPORATIONS ⚖107 — PARTY ALLEGING STOCK ISSUE TO BE VOID HAS BURDEN OF PROOF.

Seller suing buyer for par value of preferred stock accepted as part of purchase price upon ground that the issue of preferred stock was fictitious and void because of a violation of Const. 1901, § 234, and Code 1907, § 3479, in its authorization and issuance, has burden of proving such facts.

2. EVIDENCE ⚖130—RECORD IN OTHER ACTION BETWEEN OTHER PARTIES INADMISSIBLE AS RES INTER ALIOS.

In seller's action against buyer for par value of corporate stock accepted as part of purchase price upon ground that stock was void, the court was not authorized to supplement the evidence by looking to the record in another case between the corporation and another party involving the validity of such stock, since the proceedings in the other case were res inter alios acta.

3. CORPORATIONS ⚖107 — EVIDENCE HELD NOT TO SHOW INVALID ORGANIZATION OR ISSUANCE OF STOCK.

In seller's action against buyer for par value of preferred stock accepted as part of purchase price on ground that preferred stock issue was fictitious and void under Const. 1901, § 234, and Code 1907, § 3479, evidence *held* not to justify conclusion that the corporation violated the Constitution or statutes in any respect, either in its organization or the issuance of stock.

4. CORPORATIONS ⚖66—NOTICE OF MEETING TO INCREASE STOCK HELD WAIVED BY STOCKHOLDERS.

Failure to give stockholders 30 days' notice of meeting called for the purpose of increasing the stock, as required by Code 1907, § 3480, was waived where all the stockholders were present and participated in the proceedings, and thereafter expressly ratified and approved the action taken.

5. CORPORATIONS ⚖593 — ORGANIZATION WITH $2,000 CAPITAL AND IMMEDIATE INCREASE TO $150,000 TO EVADE STATUTE HELD TO WARRANT CANCELLATION OF CHARTER.

If it was the scheme and purpose of incorporators by organizing a $2,000 corporation and immediately increasing its capital stock to $150,000 to thereby evade the statutory provision requiring corporations to commence business with a capital of at least 25 per cent.

of the authorized capital, the proceeding would constitute a fraud on the law, subjecting corporation to a proceeding by the state to cancel its charter.

**6. CORPORATIONS ☞29(2) — ORGANIZATION NOT OPEN TO ATTACK IN PROCEEDING TO WHICH NEITHER CORPORATION NOR INCORPORATORS ARE PARTIES.**

Where organization of corporation and increase of capital stock are regular on the face of the proceedings, and the statutes have been literally complied with, question of whether the corporation incorporated with a small capital stock and immediately after incorporation increased the capital stock to evade the statutory provision requiring corporation to begin business with a capital stock of at least 25 per cent. of authorized capital cannot be litigated in a collateral proceeding to which neither the corporation nor its incorporators are parties.

**7. CORPORATIONS ☞108—SELLER ACCEPTING VOID CORPORATE STOCK AS PART OF PRICE HAS REMEDY AGAINST CORPORATION ONLY.**

Where preferred stock was transferred to seller as part of purchase price, in good faith and on the assumption that stock was valid, seller, after treating the contract as executed for 18 months thereafter, could not recover par value of stock from buyer on ground that stock was spurious or void because of an overissue of stock, his remedy being against the corporation, and his cause of action against buyer, if any, being on implied warranty as to validity of stock.

**8. CORPORATIONS ☞108—SELLER COULD NOT RESCIND UPON DISCOVERY THAT STOCK TAKEN AS PART OF PRICE WAS VOID.**

Seller, having accepted corporate stock as part of purchase price, could not, upon discovery that stock was void after treating the contract as executed for 18 months, rescind the transaction on the ground of such invalidity, his remedy being against the corporation, and his cause of action against buyer, if any, being on implied warranty as to validity of stock.

**9. SALES ☞109—SELLER MAY NOT RESCIND AS TO PART OF CONSIDERATION.**

Seller could not retain a part of the consideration and rescind the contract with respect to the other part.

**10. CORPORATIONS ☞108—SELLER'S ACTION AGAINST BUYER UPON DISCOVERY OF INVALIDITY OF STOCK ACCEPTED AS PART OF PRICE IS FOR BREACH OF IMPLIED WARRANTY.**

Where corporate stock is transferred to seller as part of purchase price in good faith and on assumption that stock is valid, seller's cause of action, if any, against buyer upon discovery that stock is invalid is on an implied warranty that stock was valid.

**11. CORPORATIONS ☞107—ACTION ON COMMON COUNTS WILL NOT LIE FOR IMPLIED WARRANTY AS TO VALIDITY OF STOCK TAKEN AS PART OF PRICE.**

An action on the common counts will not lie against buyer for breach of implied warranty that corporate stock taken as part of purchase price was valid.

**12. CORPORATIONS ☞107—SELLER OF STOCK DOES NOT WARRANT CORPORATION'S RIGHT TO ISSUE IT.**

Bona fide seller of stock warrants merely his title to the shares, and not the right of the corporation to issue them, and, if he comes by the stock honestly and sells it in good faith, there is no recourse to him, even though it turns out to be spurious.

**13. CORPORATIONS ☞108—PURCHASER ENTITLED TO RELY UPON DILIGENCE OF CORPORATION AS TO ISSUANCE OF STOCK.**

A purchaser of stock has a right to rely upon the diligence of the corporation and to put faith in the recitals in the certificates issued by its agents acting within the general scope of their powers, and if, by reason of the corporation's negligence, spurious stock properly authenticated is issued by the dishonest officials having the power to issue stock, the corporation will be liable to any one purchasing it for value without knowledge of its fraudulent character.

Appeal from Circuit Court, Jefferson County; John C. Pugh, Judge.

Assumpsit by J. M. Walker against G. P. Randle. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Beddow & Oberdorfer, of Birmingham, for appellant.

Under the evidence in this case, no recovery can be had under the common count, but an action on the contract only lies. 35 Cyc. 367, 446; 49 Hun, 610, 1 N. Y. Supp. 884; 61 Tex. 345, 48 Am. St. Rep. 280; 54 Ill. 157. In the absence of fraud, a bona fide vendor of stock can be held to warrant only his own title, not the right of the corporation to issue. 1 Cook, Corporations, 296; Thompson, Corporations, § 3557; 99 Pa. 344; 41 N. Y. 619; 6 R. C. L. §§ 9, 106, 345, 390, and 927.

Stroling A. Wood, of Birmingham, for appellee.

The issue of the stock was void. 200 Ala. 397, 76 South. 313; 73 Ala. 325; 105 U. S. 143, 26 L. Ed. 968; section 3479, Code 1907. There was an implied warranty that the thing sold had an existence. 163 U. S. 385, 16 Sup. Ct. 1148, 41 L. Ed. 199; 165 N. Y. 125, 58 N. E. 777, 53 L. R. A. 153; 35 Cyc. 45; 59 Ala. 503; 184 Ala. 301, 63 South. 994. See generally also section 234, Const. 1901.

BROWN, P. J. This is an action of assumpsit by the appellee against the appellant. the complaint consisting of the common counts. The litigation arises out of a transaction in which the plaintiff sold to the de-

---

fendant the Central Pharmacy, located at Wylam, Ala., and consisting of a stock of goods and fixtures, and a going business. The contract of sale was in writing and the stipulations thereof here pertinent are:

"All stock of goods of whatever kind and description now in the store where said business is located, together with the soda fountain, counters, shelving, furniture, and fixtures of whatever kind and description now in said store, shall be invoiced and listed at the cost of same placed in store, and the total cost as evidenced by the said invoice price shall be the price the said J. M. Walker agrees to take and the said G. D. Randle agrees to give for said business.

"The said G. D. Randle has upon the signing of this agreement paid to J. M. Walker the sum of $100.00, the receipt of which is hereby acknowledged, to bind the trade, the same to be part payment on the purchase price of said business, provided the said G. D. Randle shall perform his part of this agreement. Should the said G. D. Randle fail or refuse to perform his part of this agreement, then the said sum of $100.00 shall be forfeited to J. M. Walker. Should J. M. Walker fail or refuse to perform his part of this agreement, then he shall return the said $100.00 to the said G. D. Randle.

"Payments to be made as follows: $400.00 paid in cash when deal is closed; $1,000.00 to be paid in capital stock of the Averyt Drug Company at par value; and balance of purchase price to be secured by bankable promissory notes and mortgage on certain fixtures now in said store, hereinafter to be agreed on.

"It is further agreed that there are certain outstanding accounts owing by J. M. Walker for stock, etc., now in said store which is to be paid by G. D. Randle as they come due and charged to J. M. Walker or deducted from the purchase price of said business, also one certain mortgage for about $456.16 due from J. M. Walker to J. W. Lockhart payable at ten dollars per month, which is to be paid off by G. D. Randle and charged against J. M. Walker as stated above relative to the outstanding accounts.

"It is further agreed that the parties hereto appoint such persons as they may agree on to take stock and value of same, and the prices thus fixed by the parties taking the invoice shall be the price the said J. M. Walker agrees to take and the said G. D. Randle agrees to pay."

The sale was consummated on May 14, 1914, and the possession of the property delivered to the purchaser, along with a bill of sale, which recites, among other things:

"Know all men by these presents that I, J. M. Walker, of Wylam, in said state and county, being the sole owner and proprietor of the Central Pharmacy, located at Wylam, for and in consideration of the sum of two thousand eight hundred and eighty-one ($2,881.00) dollars to me in hand paid as follows, viz.: Nine hundred and seventy-five ($975.00) dollars in cash, one thousand ($1,000.00) dollars in Averyt Drug Company, Inc., capital stock at par value, the assumption, by the purchaser hereinafter named of mortgage due by me to J.

W. Lockhart for four hundred and fifty-six ($456.00) dollars, and outstanding accounts against the said Central Pharmacy estimated to be about four hundred and fifty ($450.00) dollars—do hereby grant, bargain, sell, convey, and deliver unto G. D. Randle all right, title, and interest in and to the following described personal property, viz.: The business known as the Central Pharmacy, now located at Wylam, in said state and county, together with all stock of drugs, cigars, tobacco, and merchandise of whatever kind or description now in said place of business, all counters, shelving, showcases, scales, cash registers, soda fountain, and furniture and fixtures of whatever kind or description now located in said place of business, the said stock of merchandise, furniture, and fixtures having been this date invoiced and listed by J. W. Lockhart and G. D. Randle, a copy of said invoice and lists being attached hereto and made a part hereof, to have and to hold forever."

It is conceded by the plaintiff that the defendant fully performed the contract with respect to the payment of the purchase money, except as to the stipulation as to the "one thousand ($1,000.00) dollars in Averyt Drug Co., Inc., capital stock at par value." As to this, it is conceded that the defendant delivered to the plaintiff, properly indorsed, "certificate 131," issued to the defendant for 10 shares of the preferred stock in the Averyt Drug Company, Inc., at par value of $100, reciting, among other things, that the defendant had paid therefor in cash the sum of $1,000. It is not disputed that this certificate, properly indorsed, was accepted by the plaintiff in performance of this provision of the contract, and was afterwards by him indorsed to his father, N. A. Walker, who surrendered it to the Averyt Drug Company, Inc., and in lieu thereof had other certificates issued to and in the name of said N. A. Walker, that N. A. Walker, or the plaintiff, caused one of such certificates to be issued to one Flumer, and that 9 shares of the stock originally represented by the certificate delivered by the defendant to the plaintiff were transferred on the books of the corporation to N. A. Walker and the other to said Flumer. The certificate of stock issued by the drug company to N. A. Walker was held by him, or by the plaintiff through him, for 18 months or more without any suggestion that the consummation of the contract was not satisfactory, and during that time one or more dividends were paid by the corporation on the stock which was received and retained by the plaintiff. About this time some litigation between the Averyt Drug Company and one Heide arose, involving the validity of the stock issued by the Averyt Drug Company, and the plaintiff, assuming, or being advised, that the certificate of stock held by his father or by him was void, tendered said 9 shares to the defendant and demanded of him $1,000, the balance alleged to be due on the property sold by the plaintiff to

the defendant. This demand was refused, and the plaintiff, on August 10, 1917, brought this action to recover said alleged balance.

[1] The contention of the plaintiff here is that the certificate of stock purporting to represent 10 shares of the preferred stock in the Averyt Drug Company, Inc., represented nothing; that the supposed issue of stock was fictitious and void because of a violation of the statute in its authorization and issuance. By this contention the plaintiff shoulders the burden of proving these facts. To this end he offered, without more, the following evidence: A certified copy of the declaration of incorporation of the Averyt Drug Company, Inc., and the certificates pertaining thereto, and two amendments to the declaration of incorporation, one increasing the amount of the authorized capital stock and the certificates relating thereto, and another changing the name of the corporation from the Averyt Drug Company, Inc., to the Capital Securities Company, and the certificates of stock issued to the defendant, the indorsements thereon, and those issued by the Averyt Drug Company, Inc., to N. A. Walker upon the surrender of said certificate numbered 131. This evidence establishes the following facts: That the Averyt Drug Company, Inc., was organized with an authorized capital stock of $2,000, divided into 20 shares of $100 each, 10 of which were designated as common stock and 10 preferred stock; that all of the common stock originally authorized was subscribed and paid for in cash, and that the declaration of incorporation, together with the certificates and proof required by the statute, was duly filed in the office of the judge of probate of Jefferson county and recorded therein on May 22, 1913; that a special meeting of the directors of the corporation was called by the president on May 22, 1913, and at such meeting a resolution was adopted by the board of directors calling a meeting of the stockholders the following day to consider an increase in the amount of the authorized capital stock of the corporation from $2,000 to $150,000, $50,000 of which was to be common stock, and $100,000 preferred stock; that said meeting was held in accordance with the resolutions and at the time designated by the resolution, and all the stockholders of the corporation, being present and participating in the proceeding, by unanimous vote authorized the increase of the stock in accordance with the plan outlined in the resolution of the directors of the corporation. At this time all the stockholders by an appropriate declaration in writing attached as a part of the proceedings expressly ratified and approved the action taken at this special meeting of stockholders. The several certificates of stock offered in evidence each and all recite that the person to whom they were issued had paid par value for the several shares of stock represented thereby in cash to the corporation.

[2] While there is some reference made by the plaintiff, testifying as a witness in his own behalf, to the case of Heide v. Capital Securities Co., 200 Ala. 397, 76 South. 313, and the decision of the Supreme Court therein, the trial court was not authorized to look to the facts in that case, or the record thereof, to aid or supplement the evidence offered in this case. The proceedings of that case are between parties not here in interest and this case involves some questions not involved in that case. The proceedings in that case are clearly res inter alios acta, and could not have been offered as evidence to aid the plaintiff here. Fuller v. Whitlock, 99 Ala. 411, 13 South. 80.

Moreover, in that case the agreed statement of facts show that 1,334 shares of the stock involved, consisting of 846.5 preferred and 487.5 common, were issued without consideration, and the stock so issued was void. Const. 1901, § 234; Heide v. Capital Securities Co., 200 Ala. 397, 76 South. 313; Code 1907, § 3479.

[3, 4] We find nothing in this record to justify the conclusion that the Averyt Drug Company, Inc., violated the Constitution or statutes in any respect, either in its organization or the issuance of stock. In fact, the proceedings, so far as they are here shown, literally comply, in every respect, with the statutes, except as to the requirements of section 3480 of the Code of 1907 that 30 days' notice shall be given of a meeting of the stockholders called for the purpose of increasing the stock of the corporation. However, it appears from the proceedings that all of the stockholders were present, and participating in the proceedings, and thereafter expressly ratified and approved the action taken. This was a waiver of the irregularity, if such it was. Nelson v. Hubbard and Adams Cotton Mills v. Dimmick, 96 Ala. 238, 11 South. 428, 17 L. R. A. 375; Barrett v. Pollak Co., 108 Ala. 390, 18 South. 615, 54 Am. St. Rep. 172.

The inhibition of section 234 of the Constitution is against the issuance of stock without consideration therefor, and declares that stock so issued is fictitious and void. Const. 1901, § 234. On the other hand, section 3479, Code 1907, is an express limitation on the power of the corporation to issue preferred stock in an amount in excess of two-thirds of the capital stock subscribed and paid for in cash or property and previously authorized. This section does not deal with the question of the authorization of the issuance of capital stock, or the increasing or diminishing of the amount authorized. These questions are dealt with in the succeeding section. Code 1907, § 3480. The legislative purpose is therefore manifest in section 3479 that in issuing

preferred stock the corporation must keep within the limits of the capital stock authorized by its charter as originally filed or as subsequently amended as by the statute provided. 4 Thomp. on Corp. § 3545.

While neither the Constitution nor statutes prohibit a corporation from accepting services or labor in discharge of the subscription of its stockholders for stock, but in fact expressly authorizes the acceptance of "necessary services" and "necessary labor" in discharge of the stockholder's obligation, yet in the issuance of preferred stock common stock so paid for cannot be taken into account as forming a basis for the issue of preferred stock; the issuance of such preferred stock is expressly limited by the statute to an amount not in excess of "two-thirds of the capital stock paid for in cash or property." Code 1907, § 3479.

[5, 6] If it was the scheme and purpose of the incorporators, by organizing a $2,000 corporation and immediately increasing its capital stock to $150,000, and by this method of procedure evade the provisions of the statute that "the amount of capital stock with which it will begin business, shall not be less than twenty-five per cent. of the authorized capital, and in no case less than one thousand dollars" (Code 1907, § 3446, subsec. 4), this would constitute a fraud on the law, subjecting it to a proceeding by the state looking to a cancellation of its charter. State ex rel. White v. Citizens' Light & Power Co., 172 Ala. 232, 55 South. 193; Floyd et al. v. State ex rel. Baker, 177 Ala. 169, 59 South. 280. But where, as here, the proceedings are regular on their face, and the statutes have been literally complied with, this question cannot be litigated in a collateral proceeding to which neither the corporation nor its incorporators are parties. The proceedings are not void on their face, but at most voidable on a direct attack.

All the stock shown to have been issued by the Averyt Drug Company, Inc., in this case appears to have been paid for in cash, and there is nothing in the evidence to show that the amount of preferred stock issued exceeded two-thirds of the capital stock paid for in cash or property. Therefore the plaintiff has failed to sustain the burden of proof resting upon him.

[7-11] There is another reason why the plaintiff cannot recover in this action. It is clear from the evidence in this case that plaintiff, in making the sale of the stock of goods to the defendant and in accepting in part payment thereof stock in the Averyt Drug Company, Inc., was dealing with respect to the stock in question; and it is conceded that both the plaintiff and the defendant were dealing in good faith and on the assumption that the stock was valid. Therefore, by the delivery of the stock in question and the acceptance of it by the plaintiff, the contract became executed, and was so treated by the plaintiff for 18 months thereafter. There was no offer on the part of the plaintiff to rescind the entire contract; in fact, there was no ground that would authorize him to take such a step, and certainly he could not retain a part of the consideration and rescind the contract with respect to the other. 6 R. C. L. p. 927, § 311. If he has any cause of action against the defendant, it would be on an implied warranty that the stock represented by the certificate delivered to the plaintiff was valid, and for a breach of this warranty an action on the common counts will not lie. Austin v. Beall, 167 Ala. 426, 52 South. 657, Ann. Cas. 1912A, 510; Russell v. Gillmore, 54 Ill. 147; Bower v. Wells, Cowp. 818, 98 Eng. Rep. 1179.

[12] As to the warranty in such cases, the weight of authority is:

"In the absence of fraud, the purchaser of over issue and spurious stock cannot hold his vendor liable thereon. The bona fide vendor can be held to warrant only his title to the shares, not the right of the corporation to issue them. If he comes by them honestly and sells them in good faith, there is no recourse to him, even though they turn out to be spurious." 1 Cook, Corp. (6th Ed.) § 296; 4 Thomp. Corp. § 3557; People's Bank v. Kurtz, 99 Pa. 344, 44 Am. Rep. 112; Seizer v. Mali, 41 N. Y. 619.

[13] The defendant's title to the stock here involved is in no way questioned. And it is not denied that whatever right or interest the defendant held by virtue of his certificate of stock was transferred to the plaintiff, and, as has often been declared:

"On the clearest principles a corporation owes the duty to all persons dealing in its stock to observe care in the issuance of such stock, and particularly in the matter of the supervision of its issuing officers. A purchaser of stock has a right to rely upon the diligence of the corporation and to put faith in the recitals in the certificates issued by its agents acting within the general scope of their powers. And the rule is that, if by reason of its negligence in this regard spurious stock, properly authenticated, is issued by dishonest officials, having the power to issue stock, the corporation will be liable to any one purchasing it for value, without knowledge of its fraudulent character. This rests upon the familiar principle that, whenever one of two innocent persons must suffer by the act of a third, he who has enabled such person to occasion the loss must stand it." 4 Thomp. Corp. § 3566, and authorities there collated.

Therefore, if the plaintiff had sustained his contention by the evidence in this case that the stock represented by the certificate transferred by him to the plaintiff was an over issue of stock, or was spurious or fictitious, his remedy lies in an action against the corporation. Heide v. Capital Securities Co., supra. The views above expressed as to the construction of section 3479 of the Code my

Brothers hold to be dictum, and they do not concur therein, but do concur in all else stated.

The judgment of the trial court will therefore be reversed, and judgment here rendered in favor of the defendant.

Reversed and rendered.